UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMUEL GOODMAN,

                               Plaintiff,

vs.

MULLBERRY KNOLL, INC., and
MICHAEL COLVIN,

                             Defendants.

_____

DECISION
and ORDER

12-CV-6249T

## INTRODUCTION

Plaintiff, Samuel Goodman ("Plaintiff" or "Goodman") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. ("Title VII") and Article 15 of the New York State Human Rights Law ("NYSHRL") against defendant Mullberry Knoll, Inc. and Michael Colvin, ("Defendants"), alleging that Defendants discriminated against him on the basis of gender, sexual orientation and perceived sexual orientation. Specifically, Plaintiff, a heterosexual male, who worked as a waiter at the Sun Garden Grille, a restaurant in Waterloo, New York, alleges that he was denied employment at a new restaurant opened by the defendants because of his gender and sexual orientation, and in retaliation for rejecting defendant Colvin's sexual advances.

Defendants deny Goodman's claims and move for summary judgment contending that Goodman is unable to establish that the Defendant's failure to employ him at the new restaurant was unlawfully motivated by Goodman's gender or sexual orientation, or in retaliation for Goodman's

rejection of Colvin's alleged sexual advances. Rather, Defendants contend that Plaintiff was not selected for the staff of their newly opened restaurant because he failed to come to work on the days he was scheduled to work at the Sun Garden Grille.  They claim that because Goodman simply stopped showing up to work, his employment with the company ended.  Defendants further contend that plaintiff is unable to establish a claim for retaliation because he cannot establish that he engaged in any "protected activity" under state or federal anti-discrimination law.

Plaintiff opposes Defendants' motion for summary judgment claiming that there are genuine issues of material fact in dispute. He argues that he did not appear at work because he was never scheduled to work, and was effectively terminated by not being scheduled to work in retaliation for his refusing to engage in a sexual relationship with Defendant Colvin.

BACKGROUND

I. Factual Background

The undisputed facts set forth below are derived from the admissible evidence submitted by the parties pursuant to the instant motion, including deposition testimony and other documentary evidence.

Defendant Colvin is a homosexual male who is the sole owner of Defendant Mulberry Knoll, Incorporated, which operates the Sun Garden

Grille restaurant. Deposition of Michael Colvin ("Colvin Dep.) 6-7. Plaintiff, a heterosexual male, was interviewed by Defendant Colvin and hired to work at the Sun Garden Grille in November 2010. Deposition of Samuel Goodman ("Goodman Dep.")14-15, 48-50. At the time Plaintiff was hired, Defendant Colvin was working with his business partner Troy Slocum to opening another restaurant, the Beef and Brew. Goodman Dep. 20-25. Plaintiff claims that he was specifically hired to work at the Beef and Brew, and that his employment at the Sun Garden Grille was only intended to be training for his anticipated employment at the Beef and Brew. Goodman Dep. 83-84.

Plaintiff alleges that soon after he began working at the Sun Garden Grille, Colvin began sexually harassing him. The alleged harassment began during a workplace conversation when Goodman, Colvin, and other employees were discussing sex slave trafficking in the context of the World Cup Soccer tournament then occurring in South Africa. Goodman Dep. 26. According to Goodman, someone said during the conversation that he, (Goodman) would earn more money than other waiters as a prostitute. Goodman could not recall if Colvin made that comment. Also during the conversation, Colvin, as the owner of the restaurant, was allegedly referred to as the "pimp" of the waiters. Goodman Dep. 27-28.

According to Goodman, the discussion of his working as a prostitute continued in text messages between he and Colvin. Goodman Dep. 28-29.  In response to alleged texts from Colvin speculating on the value of Goodman's services as a prostitute, Goodman allegedly replied to Colvin that he "wasn't for sale," and that Colvin "couldn't afford" him.  Goodman Dep. 30-32. Goodman, however, did not complain to Colvin that he found the emails to be harrassing. Goodman Dep. 30-32. According to Goodman, he was unable to complain to anyone about the emails because Colvin was his boss and the owner of the restaurant. Goodman Dep. 30.

Plaintiff claims that soon after that text exchange, he received a text message from Defendant Colvin offering to pay him $500 in exchange for oral sex. Goodman Dep. 34. He also claims that Defendant Colvin requested that Plaintiff send him photos of himself. Goodman Dep. 34-36.  Although Colvin admits that he and Plaintiff exchanged text messages, he denies that he ever offered payment for sexual favors. Colvin Dep. 18-19, 55-56, Goodman Dep. 45-47.  Instead, Colvin claims that text conversations in reference to $500 solely referenced the monthly rent Plaintiff paid for his apartment. Goodman Dep. 37, 34-36, 46-41, Def. Dep. 10-11, 57-59.  Indeed, the parties agree that Plaintiff did in fact ask Colvin to loan him $500.00 for rent, and Colvin admitted that he had joked at one point that he "would pay over

$500 for a guy like you." Exhibit 1 to Affirmation of Jesse C. Rose, Statement of Defendant Colvin p. 2.   Although both defendant and plaintiff attempted to obtain copies of text messages from Colvin and Goodman's cellular phone service provider, the text messages could not be obtained and therefore are not available for review.

Plaintiff claims that when he returned from vacation on January 1, 2011, Colvin did not return his calls or texts and he was never scheduled to work. Goodman Dep. 71-72.   Although Colvin testified that he scheduled Plaintiff for work in early January 2011, no schedule has been produced. Colvin Dep. 61-63.   Defendants claim that Goodman simply failed to appear for his scheduled shifts and that he never contacted Defendant Colvin to work.   According to Goodman, the defendant's failure to schedule him for work at Beef and Brew effectively terminated his employment. Goodman Dep. 83-84, 87-88.

On May 23, 2011, Plaintiff filed an administrative complaint of discrimination with the Equal Employment Opportunity Commission. Complaint at ¶ 4.   On March 28, 2012, Goodman received a Notice of Right to Sue from the EEOC.   Complaint at ¶ 5.   Thereafter, Plaintiff filed the instant action on May 3, 2012.

II.   Defendants' Motion

Defendants move for summary judgment on grounds that employment discrimination based on sexual orientation is not forbidden under

federal Law, and therefore, even if plaintiff could establish that he had been discriminated against because he is a heterosexual, such a claim would not state a violation under Title VII.  Defendants further argue that Plaintiff has failed to show that he was discriminated against in any way based on his male gender or any other characteristic protected under anti-discrimination laws.  Defendants contend that there is no evidence that male employees were discriminated against, or that any alleged harassment suffered by the Plaintiff rose to a level sufficient to state a hostile environment claim. Defendants also seeks summary judgment on the claim of retaliation on grounds that the Plaintiff is unable to demonstrate that he engaged in any protected employment activity, or that any adverse employment action was taken as a result of plaintiff's having engaged in protected activity.

DISCUSSION

I. <u>Standard of Review for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). If,

after considering the evidence in the light most favorable to the non-moving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. <u>Scott,</u> 550 U.S. at 380, <u>citing</u>, <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir.2002), <u>quoting</u>, <u>Matsushita Elec.</u>, 475 U.S. at 586-87. As the Supreme Court stated "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. <u>R.G. Group, Inc. v. Horn and Hardart, Co.</u>, 751 F.2d 69, 77 (2d Cir. 1984), <u>quoting</u>, <u>SEC v. Research Automation Corp</u>., 585 F.2d 31, 33 (2d Cir. 1978).

    II. <u>Plaintiff's Title VII Claim</u>

    Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual . . . because of such individual's

race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). Claims of employment discrimination under Title VII are analyzed under the well-recognized burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and later refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 224 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under the McDonnell Douglas test, the paintiff bears the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996). If the plaintiff succeeds in stating a prima facie case, the burden of production shifts to the defendant to state a legitimate non-discriminatory reason for taking the employment action at issue. Should the employer meet the burden, the burden of production then shifts back to the plaintiff to show that the reasons proffered by the employer were not the true reasons for the adverse employment action, but instead were a pretext for discrimination and that discrimination was the real reason. See, Burdine,450 U.S. at 252-253. To prove pretext, the plaintiff must put forth adequate evidence to demonstrate the legitimate non-discriminatory reasons proffered by the employer were false and that intentional discrimination was the real reason for the adverse action. Holt, 95 F.3d at 129.

In order to establish a prima facie case, a plaintiff must show (1) that the plaintiff was a member of a protected class, (2) that the plaintiff applied for a position for which he or she was qualified, (3) that the plaintiff was subject to an adverse employment decision, and (4) the decision was made under circumstances giving rise to an inference of discrimination. Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001). Here, Plaintiff alleges a claim under both a quid pro quo discrimination theory as well as a hostile work environment theory.

A. Discrimination Claims

To succeed on a quid pro quo discrimination theory, a plaintiff must show that tangible employment actions were linked to the refusal or acceptance of a supervisor's sexual advances. See, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753-54, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), Mormol v. Costco Wholesale Corp., 364 F.3d 54, 57-58 (2d Cir. 2004). To prevail on a hostile work environment theory, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The plaintiff must demonstrate "not only that [he] subjectively perceived the environment to be [hostile or] abusive, but also that the

environment was objectively hostile and abusive" to survive summary judgment. Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)(quoting, Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir.2003).

Here, Plaintiff fails to produce evidence that he suffered discrimination as a member of a protected class under Title VII. His claims for sexual harassment are based on sexual orientation or reverse sexual orientation and gender.   It is "well-settled in this circuit and in all others to have reached the question that ...Title VII does not prohibit harassment or discrimination because of sexual orientation." Simonton v. Runyon, 232 F.3d 33,35 (2d Cir. 2000), Anderson v. Davis Polk & Wardell LLP 850 F.Supp.2d 392, 411-412 (S.D.N.Y. 2012) Dawson 398 F.3d at 217-218.

To the extent that Plaintiff asserts a claim based on gender, this too fails.  Where a Title VII case is based upon gender, Plaintiff must show that the alleged acts of hostility occurred because of the plaintiff's gender. This does not require a showing that the environment or acts of discrimination were sexual in nature; it does, however, require a showing that such acts occurred because of plaintiff's gender. Pucino v. Verizon Wireless Communications, Inc., 618 F,3d 112, 117-18 (2d Cir. 2010). The issue is whether there is evidence that "members of one sex are exposed to disadvantageous terms

or conditions of employment to which members of the other sex are not exposed." Durkin v. Verizon New York, 678 F.Supp.2d 124, 133 (S.D.N.Y. 2009), quoting, Harris v. Forklift Sys., Inc., 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).  Title VII does prohibit discrimination based upon "sex stereotyping," that a plaintiff has been subject to discrimination because his or her conduct fails to "conform to gender norms." Simonton, 232 F.3d at 37-38; Price Waterhouse v. Hopkins, 490 U.S. 228, 251-252, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).  Moreover, gender stereotying cannot be used to "bootstrap protection for sexual orientation into Title VII." Dawson, 398 F.3d at 218, quoting Simonton, 232 F.3d at 38.

Here, Plaintiff fails to set forth any facts supporting a claim of gender discrimination or gender stereotyping. Plaintiff bases his entire claim on sexual harassment of him, a heterosexual male, by a homosexual supervisor.

Even if Plaintiff could demonstrate he is a member of a protected class under Title VII, he fails to produce evidence from which a reasonable jury might infer that adverse employment actions were linked to a refusal of sexual advances.  The only evidence of a possible sexual advance is Plaintiff's own testimony that there was a text message from Defendant Colvin that he would pay for sexual activities

with Plaintiff. Goodman Dep. 34. However, even Plaintiff's own testimony is equivocal about the offer. He admits that the context of the discussion of money for sex was a continuation of a group conversation with other employees regarding sex trafficking in South Africa. There is no evidence of a any offer and refusal of sexual activities relative to work activity that could form the basis for a quid pro quo claim.

Similarly, Plaintiff fails to produce evidence to establish a hostile work environment under Title VII or the NYSHRL. A court considers several factors in determining whether a hostile work environment exists, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris 510 U.S. at 23, 114 S.Ct. 367. The Plaintiff may show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)(internal quotation marks omitted).

Here, Plaintiff alleges 1) a conversation between Defendant Colvin and other employees regarding sex trafficking and the value each employee could bring in that trade; 2) text messages in which Defendant

Colvin allegedly requested photos of Plaintiff and further discussed Plaintiff's potential value as a provider of sexual favors; and 3) an alleged offer of payment for sexual favor.  Taken together, the alleged conduct does not rise to the level of a hostile work environment. <u>See</u>, <u>Mendez-Nouel v. Gucci America, Inc.</u>, 2013 WL 5584317 (2d Cir. 2013)(two instances of touching, workplace banter about the supervisor's sexual orientation and nightlife and a single occasion where a supervisor told the plaintiff he was gay but "you just don't know it", taken together did not rise to the level of a hostile work environment); <u>Redd v. N.Y. State Division of Parole</u>, 678 F.3d 166, 177 (2d Cir. 2012) (discussing "[t]he line between complaints that are easily susceptible to dismissal as a matter of law and those that are not," with "[c]asual contact ... normally ... unlikely to create a hostile environment i*n the absence of aggravating circumstances such as continued contact after an objection*," and "[d]irect contact with an intimate body part constitut[ing] one of the most severe forms of sexual harassment." (Emphasis in original) (internal citations and quotation marks omitted).

The text messages allegedly received by the plaintiff, when viewed together or individually, lack the pervasiveness, ridicule or intimidation necessary to create a hostile work environment for purposes of Title VII.  "Conduct that can be categorized as a few

isolated incidents, teasing, casual comments or sporadic conversation will not be deemed to create a hostile work environment." <u>Davis-Bell v. Columbia Univ.</u>, 2012 WL 946680 (S.D.N.Y. Mar. 19, 2012). Plaintiff's allegations fall far short of what is required to establish a hostile work environment. See, <u>Marshall v. N.Y.City Bd. of Elections</u>, 322 F.App'x 17 (2d Cir. 2009) (finding no hostile work environment where homosexual supervisor showed plaintiff a "sexual device he had purchased for his partner" even though plaintiff "may have been legitimately offended" by such talk) and <u>Murray v. Visiting Nurse Servs.</u>, 528 F.Supp.2d 257, 278-79 (S.D.N.Y. 2007)(male to male statements in the workplace such as "you're such a bitch," "good morning ladies," "when are you going to come out of the closet," and "are you ladies going to the parade?" insufficient to defeat summary judgment on hostile work environment claim).

Moreover, Plaintiff acknowledged that the alleged harassment did not prevent him from doing his job. Goodman Dep. 76, 79. In addition, Plaintiff admits that he did not specifically object to or complain of the conduct and in fact he wanted to continue his employment with Defendants. Goodman Dep. 88.

Defendant Colvin's comments fail, as a matter of law, to form the basis of a finding of a hostile work environment for purposes of Title VII and the NYSHRL.

B. <u>Retaliation Claim</u>

Title VII provides a remedy for retaliation under certain circumstances. Specifically, the statute prohibits an employer from discriminating against an employee who: (1) has opposed an unlawful employment practice, or (2) has "participated in any manner" in an investigation under Title VII. 42 U.S.C. § 2000e-3(a). To state a claim of retaliation based upon the allegation that the plaintiff participated in protected activity, plaintiff must show "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." <u>Feingold v. New York</u>, 366 F.3d 138, 156 (2d CIr. 2004)(citations omitted).

Participation in a protected activity includes expressing opposition to employment practices unlawful under Title VII as well as making a charge in a Title VII proceeding. <u>Fenn v. Verizon Communications, Inc.</u>, 2010 WL 908918 *10(S.D.N.Y. 2010); see 42 U.S.C. § 2000e-3(a). The activity complained of need not be activity that actually violated Title VII. Rather, a plaintiff alleging retaliation need only have a "reasonable, good faith belief that the employment practice complained of is unlawful." <u>Reed v. A.W. Lawrence & Co., Inc.</u> 95 F.3d 1170 (2d Cir.1996), quoting, <u>Manoharan v. Columbia University College of Physicians and Surgeons</u>, 842 F.2d 590, 592 (2d Cir. 1988).

Thus, a complaint about conduct that is reasonably perceived to be sexually discriminatory conduct constitutes protected activity. <u>Stathatos v. Gala Resources, LLC</u>, 2010 WL 2024967 *12 (S.D.N.Y. 2010).

Plaintiff admits that he never complained of any sexually discriminatory practices while he was employed by Defendants. Goodman Dep. 88. Further, he did not file his Division of Human Rights Complaint until May 23, 2011, five months after he last worked for Defendants.  Without evidence that Plaintiff either opposed an employment practice or participated in any manner in an investigation, there can be no connection with any alleged adverse employment actions.

C. <u>State Claims</u>

"[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." <u>Rojas v. Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 107, n. 10 (2d Cir. 2011)(citation omitted). Accordingly, the Court exercises supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367 and the outcome of a case made pursuant to NYSHRL is the same as it is under Title VII. See, <u>Smith v. Xerox Corp.</u>, 196 F.3d 358 (2d Cir. 1999). As discussed infra, Title VII does not protect against discrimination on the basis of sexual orientation, instead only proscribing discrimination on the basis of "race, color, religion, sex or national origin."*See* 42 U.S.C. § 2000e-2(a); <u>Dawson v. Bumble & Bumble</u>, 398 F.3d

211, 217 (2d Cir. 2005). The NYSHRL, by contrast, does protect against discrimination on the basis of sexual orientation. Plaintiff, however, has failed to establish that he suffered from a hostile work environment based on his heterosexual orientation, or that he suffered from quid pro quo discrimination. Similarly, plaintiff has failed to establish that he was retaliated against based on his heterosexual status. Accordingly, the claims brought pursuant to the NYSHRL are dismissed as a result of Plaintiff's failure to produce evidence from which a reasonable jury might infer discrimination, the creation of a hostile work environment, or retaliation.

<u>CONCLUSION</u>

For the reasons set forth above, the Court grants Defendants' Motion for Summary Judgment (Dkt # 25). Plaintiff's Complaint (Dkt # 1) is hereby dismissed with prejudice.


IT IS SO ORDERED.

S/ Michael A.  Telesca
_____
Honorable Michael A. Telesca
United States District Judge

DATED:    January 15, 2014
          Rochester, New York